IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEANNIE SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 24-265-E |
| ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

O R D E R

AND NOW, this 30th day of April, 2025, upon consideration of the parties' cross-motions for summary judgment, the Court, after reviewing the Commissioner of Social Security's final decision denying Plaintiff's claim for disability insurance benefits under Subchapter II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and her claim for supplemental security income benefits under Subchapter XVI of the Act, 42 U.S.C. §§ 1381 *et seq.,* finds that the Commissioner's findings are supported by substantial evidence and, accordingly, affirms.   *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153-54 (2019); *Jesurum v. Secretary of U.S. Dep't of Health & Human Servs*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988)).   *See also Berry v. Sullivan*, 738 F. Supp. 942, 944 (W.D. Pa. 1990) (if supported by substantial evidence, the Commissioner's decision must be affirmed, as a federal court

may neither reweigh the evidence, nor reverse, merely because it would have decided the claim differently) (*citing Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)).[1]

---

[1] Plaintiff contends that the decision of the Administrative Law Judge ("ALJ") is not supported by substantial evidence. Specifically, Plaintiff argues that the ALJ erred by determining that her migraines were a non-severe impairment, by not giving appropriate consideration to lay witness testimony, and by failing to resolve conflicts between jobs offered by the Vocational Expert ("VE") and her impairments. (Doc. No. 6). For the following reasons, the Court disagrees and finds the ALJ's decision is supported by substantial evidence.

Plaintiff filed a claim for supplemental security income under Title XVI on April 7, 2022 and, a few weeks later, she filed a Title II application for disability insurance benefits on April 26, 2022. (R. 14). Plaintiff's Title II application had a relevant period beginning March 1, 2020, the alleged onset date, until June 30, 2022, the date last insured. (R. 17; Doc. No. 6 at 9); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 201 (3d Cir. 2008). Plaintiff's Title XVI application contained a relevant time period from April 7, 2022, the application date, until February 13, 2024, the date of decision. (R. 14, 43); 20 CFR § 416.202(g); *see also Dunson v. Comm'r of Soc. Sec.*, 615 Fed. Appx. 65, 67 n.1 (3d Cir. 2015) (stating "[t]he relevant period for her SSI claim began on the date she applied for benefits, and ended on . . . the date of the ALJ's decision."). Given the discrepancy in the relevant periods, the ALJ bifurcated the decision and worked through the sequential process as to each application separately with respect to Steps One through Three. (R. 14-30). Additionally, the ALJ crafted each residual functional capacity ("RFC") separately, but the ultimate RFC findings as to each application were identical. (R. 21, 33). At Steps Four and Five, the ALJ combined his Title II and XVI analyses and found Plaintiff was unable to perform any past relevant work and that there were jobs existing in significant numbers within the national economy such that Plaintiff was not disabled under both applications. (R. 41-43).

In analyzing both Plaintiff's Title II and XVI applications, the ALJ found at Step Two of the sequential process that Plaintiff had the following severe impairments: bipolar disorder, major depressive disorder, generalized anxiety disorder, aneurysm, arthritis, degenerative disc disease of the cervical and lumbar spines, hypertension, gastroesophageal reflux disease, obesity, and substance abuse disorder. (R. 17, 29). Plaintiff takes issue with the ALJ's Step Two finding, specifically in the ALJ's conclusion that her migraines were a non-severe impairment. The Court, however, finds that the ALJ's decision that Plaintiff's migraines were non-severe at Step Two of the sequential process does not necessitate remand.

Specifically, Plaintiff contends the ALJ substituted her own lay opinion for that of her treating neurologist, Dr. Karen Bellini, D.O., by finding that her migraines were non-severe when Dr. Bellini only indicated that her migraines were "stable[,]" which Plaintiff argues has a separate meaning from non-severe.   (Doc. No. 6 at 14-16).   Plaintiff notes that Dr. Bellini found her migraines were "stable for years" in each appointment note despite ordering a brain MRI, increasing her medication dosage, and prescribing a new injectable medication.   (*Id.* at 15-16).   Here, the ALJ analyzed Plaintiff's migraines at Step Two and found these were non-severe because, while Plaintiff had a history of neurology treatment and had been prescribed a variety of medications to treat these, her neurologist noted they had been stable for years.   (R. 17, 29).   Indeed, the record shows that both Dr. Bellini and Plaintiff's primary care provider indicated that her migraines had been "[s]table for years" and that they treated these with conservative measures, including prescription medications.   (Ex. B11F/50; *see* R. 1081, 1101, 1214, 1800, 1804).   While Plaintiff underwent a brain MRI and CT scan, which both found blood clots, the ALJ acknowledged these procedures later in the decision.   (R. 22-23, 35); *see Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (holding that an ALJ's decision must be "read as a whole").   Additionally, the ALJ did not substitute her lay opinion for that of her treating neurologist.   Instead, the decision shows that the ALJ considered Dr. Bellini's findings in the context of the wider record and decided that Plaintiff's migraines were a non-severe impairment.   Contrary to Plaintiff's assertions, it is not this Court's role to re-weigh the evidence of record.   *See Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986) (noting the Court cannot reweigh the evidence merely because it would have decided the claim differently).   Accordingly, Plaintiff's argument on this point fails.

Plaintiff next contends that the ALJ erred by failing to give appropriate consideration to and weigh the testimony of a lay witness, Karla Steighner, Plaintiff's case worker.   (Doc. No. 6 at 17-19).   Plaintiff argues that precedent demands remand in this instance.   (*Id.* at 19 (citing *Burnett v. Comm'r*, 220 F.3d 112, 122 (3d Cir. 2000)).   Plaintiff is correct that in *Burnett* the United States Court of Appeals for the Third Circuit remanded the case for, among other things, consideration of lay witness testimony.   *Id.* at 122.   However, here, while the ALJ did not acknowledge or analyze Ms. Steighner's lay witness testimony, this was, at most, harmless error as this testimony was cumulative of Plaintiff's testimony.   *See, e.g.*, *Carnes v. Comm'r of Soc. Sec.,* No. 08–99, 2008 WL 4810771, at *5 (W.D. Pa. Nov. 4, 2008) (noting failure to discuss the mother's testimony was harmless error because the mother's testimony was essentially cumulative of plaintiff's testimony and further discussion of it would not have changed the outcome); *Combs v. Barnhart,* No. CIV.A.03–5526, 2005 WL 1995457, at *2 (E.D. Pa. Aug.16, 2005) (finding remand not warranted on harmless error grounds where the ALJ failed to consider testimony of claimant's wife and there was substantial evidence to support the ALJ's credibility determination).   Here, Ms. Steighner testified as to Plaintiff's housing situation, her struggles maintaining appointments, and her sobriety.   (R. 82-85).   This was cumulative of Plaintiff's testimony on the same issues.   (R. 62-63, 68 (testifying as

3

to her living conditions, current homeless living situation, and inability to live in Section 8 housing due to fire), 72 (stating she has missed a lot of appointments due to forgetfulness), 75-76 (testifying that the last time she used drugs was three months ago)).  Therefore, the Court declines Plaintiff's invitation to remand on this point.

Likewise, the Court rejects Plaintiff's argument that the ALJ erred at Step Five as there are conflicts between the jobs identified by the VE and her severe impairments. (Doc. No. 6 at 19-22).  Plaintiff contends that the ALJ erred by relying on the VE's identified job of product inspector (also called touch up screener, printed circuit board assembly) because Plaintiff cannot perform this job with her severe impairments of arthritis and degenerative disc disease as this job requires use of bilateral arms and hands.  (*Id.* at 11 n.3, 20-21).  The Court disagrees.  The ALJ's RFC findings provide that Plaintiff can frequently reach in all directions with both hands and arms and otherwise imposes no limitations on the amount of handling or fingering that Plaintiff could perform.  (R. 21, 33).  These RFCs were crafted after the ALJ considered Plaintiff's degenerative disc disease and arthritis and concluded that these impairments did not warrant further limitations.  (*See, e.g.*, R. 17, 19, 24, 28, 29, 30, 35, 40).  The ALJ accurately communicated Plaintiff's RFC to the VE and the VE appropriately identified the job of product inspector as one that Plaintiff could perform.  (R. 78-79).  While Plaintiff is correct that the ALJ mistakenly identified this job as medium duty, when it is classified as sedentary duty, this is not an error necessitating remand as it is clear this was only a scrivener's error and the ALJ correctly cited this job within the dictionary of occupational titles.  (R. 42 (citing DOT # 726.684-110); *See Waltz v. Dudek*, No. 3:24-CV-1020, 2025 WL 714382, at *11 (M.D. Pa. Mar. 5, 2025) (citation omitted) (noting a "scrivener's error is a transcription error or a typographical error.")).  Accordingly, the VE's identified job of product inspector was based on Plaintiff's RFC and is supported by substantial evidence.

As part and parcel of the previous argument, Plaintiff contends that the job of product inspector should be eliminated, leaving only the job of assembler, which does not exist in significant numbers in the national economy with only 5,000 available jobs. (Doc. No. 6 at 21-22).  Here, the VE identified the jobs of product inspector (DOT # 726.684-110) and assembler (DOT # 732.684-062) which have 15,000 jobs and 5,000 jobs, respectively, available in the national economy.  (R. 42).  The Court notes that the job of assembler, alone, does pose only a modest number of jobs in the national economy. However, the Court need not decide whether this job, standing alone, would necessitate remand in this case as the Court has rejected Plaintiff's argument that she could not perform the job of product inspector and the two identified representative occupations provide a significant number of jobs existing in the national economy.  (R. 42 (providing 15,000 and 5,000 jobs, respectively, in the national economy); *Young v. Astrue*, 519 Fed. Appx 769, 772 (3d Cir. 2013) (finding that 20,000 jobs available in the national economy is a significant number).  Accordingly, the Court rejects Plaintiff's argument on this point.

4

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 5) is DENIED and that Defendant's Motion for Summary Judgment (Doc. No. 7) is GRANTED.

s/Mark R. Hornak
Chief United States District Judge

ecf:    Counsel of record

---

In sum, the ALJ's findings and conclusions are supported by substantial evidence. Accordingly, the decision of the Commissioner must be affirmed.